IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| BRIAN HOOLIHAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | FILE NO.: 1:10-CV-1753-SCJ |
| CLAYTON COUNTY, GEORGIA, | ) | |
| DAVID S. KENDLE, | ) | |
| MICHAEL W. HOBBS, | ) | |
| JOHN DOE, JANE DOE | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF MICHAEL HOBBS
## UNDER PENALTY OF PERJURY

1.

My name is MICHAEL HOBBS.  I am over the age of twenty-one (21)

years and am suffering under no legal disability that would prevent me from giving

testimony.  I make this declaration having personal knowledge of the facts stated

herein, and with the understanding that it will be used in the above-styled action.

2.

I am employed as a Police Officer with the Clayton County Police

Department ("CCPD").

3.

At approximately 1:45 a.m. on February 5, 2009, I was on duty and driving my patrol vehicle, accompanied by Officer David Kendle, when I observed a red Ford Fusion in the parking lot of a fitness center at 7420 Davidson Parkway. The fitness center parking lot was rarely occupied at this hour, so I drove toward the vehicle and noticed that the vehicle was not parked properly within the borders of a parking space, and was instead lodged against a handicap parking sign. The sign was partially bent over, apparently due to the force from the vehicle, which was still running. The driver, who was later identified as plaintiff Brian Hoolihan, was slumped sideways over the console.

4.

In order to further assess the situation, I exited my patrol car and attempted to raise Mr. Hoolihan's attention by tapping on the driver's side window and loudly calling to him. Although Mr. Hoolihan looked up at one point, his head bobbed. I asked Mr. Hoolihan if he had been drinking, but he only mumbled incoherently in response.

5.

Because the engine was running, the vehicle was still in "drive," and Mr. Hoolihan was generally unresponsive, I told Mr. Hoolihan to put his car in "park" and to unlock his door.  He did not attempt to do so.

6.

Based upon all of my observations, I suspected that perhaps Mr. Hoolihan had been involved in a wreck or was under the influence of alcohol or drugs.  In light of the fact that Mr. Hoolihan appeared to be in an altered mental state, I became concerned that Mr. Hoolihan's vehicle posed a significant danger.  I determined that it was necessary to ensure that the vehicle was placed in "park" and turned off in order to secure the area.

7.

I instructed Officer Kendle to pull the patrol car directly behind Mr. Hoolihan's vehicle in order to prevent it from moving.  Officer Kendle did so and parked the patrol vehicle directly behind, but not touching, Mr. Hoolihan's vehicle.

8.

I then attempted to gain entry to the vehicle, but I found that each of the doors was locked and the windows were completely up.  As a last resort, I used my ASP baton to break out the back window on the driver's side of the vehicle.  I

chose that window because it was least likely to send glass flying in Mr. Hoolihan's direction when it was broken.

9.

With the window broken, I was able to unlock the back door on the driver's side of the vehicle. Once I opened the door and got inside the vehicle, I attempted to unlock the driver's door. As I did so, Mr. Hoolihan turned toward me and began punching me and grabbing at my left arm and wrist.

10.

I pulled my left arm from Mr. Hoolihan's grasp and he then began striking me with his fists in my shoulder area. In response, I gave loud verbal commands for Mr. Hoolihan to "stop fighting," but he did not comply. In an attempt to subdue Mr. Hoolihan's attack, I applied one or two closed-fist strikes to his face.

11.

Mr. Hoolihan then shifted his body into the front passenger seat with his back to the passenger-side door and began kicking at my head. I responded by pinning his feet between the front bucket seats. When I did so, Mr. Hoolihan continued to grab at my hands. As Mr. Hoolihan was grasping my left hand, I was able to get my right hand free to unlock the front door on the passenger side of the vehicle.

12.

Officer Kendle, who was positioned directly outside the passenger-side door, immediately opened the door and removed Mr. Hoolihan from the vehicle. At the same time, I exited the vehicle from the driver's side rear door and ran around the vehicle to assist Officer Kendle, who was struggling with Mr. Hoolihan.

13.

Officer Kendle had placed Mr. Hoolihan on the ground. Even though Mr. Hoolihan was lying on his abdomen and side, he continued to struggle by grabbing at Officer Kendle's hands and wrists. Officer Kendle and I continued giving loud verbal commands to Mr. Hoolihan, ordering him to stop fighting and to put his hands behind his back. Mr. Hoolihan refused to comply with these commands and continued to fight and resist.

14.

Officer Kendle was sitting on the back of Mr. Hoolihan's legs and attempting to handcuff Mr. Hoolihan when the vehicle rolled backward and the open passenger door pinned Officer Kendle to Mr. Hoolihan's back.

15.

I knelt down beside Officer Kendle and Mr. Hoolihan in order to help Officer Kendle secure Mr. Hoolihan in handcuffs. Mr. Hoolihan grabbed my left

arm, twisted it, and tried to pull it under his torso.  In order to gain control of the situation, I delivered an elbow strike to Mr. Hoolihan's head.  Mr. Hoolihan then allowed himself to be handcuffed and there was no further struggle.

16.

As soon as Mr. Hoolihan was secured in handcuffs, I called for emergency medical help.

17.

On the date of this incident, I did not see a sticker or a decal on Mr. Hoolihan's vehicle.

18.

I did not see a necklace, bracelet, or other item on Mr. Hoolihan's person which contained any information regarding the nature of Mr. Hoolihan's medical condition until after the struggle was over.

19.

At no time during the incident did Mr. Hoolihan inform me that he was a diabetic, or that he required any accommodation for a medical condition.

20.

Mr. Hoolihan was cited for two counts of simple battery against a law enforcement officer and two counts of obstructing an officer.  When the citations

were issued, I believed that Mr. Hoolihan had willfully committed these offenses. I had no knowledge regarding Mr. Hoolihan's medical condition and did not know what had caused him to behave as he did.

21.

Before February 5, 2009, I received significant basic mandate training as well as training from the Clayton County Police Department regarding use of force.

22.

Throughout my employment with the Clayton County Police Department, I have been certified by Georgia Peace Officers Standards and Training ("POST") and have satisfied all the training requirements required by law.

23.

In order to become a POST certified peace officer, I attended a 16-week training class, and as part of that course, took several hours of instruction on proper use of force when effectuating an arrest.

24.

The Clayton County Police Department requires that officers receive additional in-house training on various aspects of use of force. I have attended the required in-service training.

25.

As part of my training with the police department, I was issued a policy and procedures manual, which contains a section on the proper use of force.

26.

During my training, I was taught that it was the policy of the Clayton County Police Department to only use the minimum amount of force necessary to overcome resistance or a threat and to cease the use of force once the resistance or threat had subsided.

27.

At all times relevant to plaintiff's allegations against me in this action, I was acting within the scope of my official duties and employment as an officer of the Clayton County Police Department.

28.

At all times relevant to plaintiff's allegations against me in this action, I was acting in good faith and without fraud, malice, or corruption.

29.

All of the actions taken by me to gain compliance of a known threat were consistent with my training as I knew it then and as I know it now.

30.

By my signature below, I declare, under penalty of perjury, that the foregoing is true and correct.

Executed on this __14__ day of August, 2011.

MICHAEL HOBBS