IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| BRIAN HOOLIHAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | FILE NO.: 1:10-CV-1753-SCJ |
| CLAYTON COUNTY, GEORGIA, | ) | |
| DAVID S. KENDLE, | ) | |
| MICHAEL W. HOBBS, | ) | |
| JOHN DOE, JANE DOE | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MICHAEL W. HOBBS' MOTION FOR SUMMARY JUDGMENT

COMES NOW Michael W. Hobbs ("this defendant") and files this memorandum of law in support of his motion for summary judgment, showing the Court as follows:

## I.    INTRODUCTION

This is a Section 1983 action stemming from plaintiff Brian Hoolihan's arrest on February 5, 2009.  Briefly stated, plaintiff claims that Hobbs arrested him without probable cause and used excessive force in doing so, all in violation of his Fourth Amendment rights.  In addition, plaintiff has brought state law claims against Hobbs for battery, false imprisonment, and intentional infliction of

emotional distress.[1]   Hobbs is entitled to summary judgment because all of plaintiff's claims against Hobbs are substantively without merit and barred by immunity doctrines.

For the sake of brevity, this defendant incorporates his Statement of Material Facts As To Which There Is No Genuine Issue To Be Tried ("SMF") pursuant to Fed. R. Civ. P. 10.

## II.      ARGUMENT AND CITATION OF AUTHORITY

Summary judgment is warranted under Fed. R. Civ. P. 56(c) when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v Catrett, 477 U.S. 317, 322 (1986).  Once such showing is made, the burden of production shifts to plaintiff, who must adduce "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## A.      Fourth Amendment Claim

Plaintiff claims that defendants violated his Fourth Amendment rights by arresting him without probable cause and by using excessive force during the

---

[1]  Plaintiff's complaint names fictional defendants, but contains no factual allegations regarding any of them.  In any event, the "John Doe" claims must be dismissed because "fictitious party practice is not permitted in federal court." New v. Sports & Rec., 114 F.3d 1092, 1094 n. 1 (11th Cir. 1997).

2

course of his arrest.  (First Amd. Compl., par. 22.)  Plaintiff's violent physical resistance to Hobbs' lawful encounter with him, however, provided ample probable cause for plaintiff's arrest and justified the force which Hobbs applied in response.

### 1.    Existence of Probable Cause

Plaintiff argues that he was wrongfully arrested for obstructing the officers, even though he cannot dispute that he was physically combative with them. (Hoolihan Depo., p. 152.)  Even if it is assumed that plaintiff's later-discovered hypoglycemic state rendered him incapable of forming the requisite intent to result in a conviction on the obstruction charges, it cannot reasonably be questioned that probable cause existed for plaintiff's arrest.  Indeed, "[t]he Constitution does not guarantee that only the guilty will be arrested.  If it did, § 1983 would provide a cause of action for every defendant acquitted --indeed, for every suspect released." Baker v. McCollan, 443 U.S. 137, 145 (1979).

For purposes of evaluating plaintiff's Fourth Amendment claim, the analysis begins and ends with the existence of probable cause. Wood v. Kesler, 323 F.3d 872, 878 (11th Cir. 2003) ("An arrest does not violate the Fourth Amendment if a police officer has probable cause for the arrest.");  Marx v. Gumbinner, 905 F.2d 1503, 1505-06 (11th Cir. 1990) ("The existence of probable cause … is an absolute bar to a section 1983 action for false arrest.").  "Probable cause to arrest exists

when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." Skop v. City of Atlanta, 485 F.3d 1130, 1137 (11th Cir. 2007) (citation omitted). This probable cause standard is practical and non-technical, applied in a specific factual context and evaluated using the totality of the circumstances. Id. The question of what amounts to probable cause is purely a question of law for the court to decide. Hargray v. City of Hallandale, 57 F.3d 1560, 1571 (11th Cir. 1995).

"Although probable cause requires more than suspicion, it does not require convincing proof, and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction." Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002) (internal citations and punctuation omitted); see also Marx v. Gumbinner, 905 F.2d 1503, 1506 (11th Cir. 1990) ("Probable cause does not require overwhelmingly convincing evidence, but only reasonably trustworthy information.").

When the police encounter evidence that "would lead a reasonably prudent and reasonable official to see a need to act to protect life or property, they are authorized to act on that information, even if it is ultimately found erroneous." United States v. Holloway, 290 F.3d 1331, 1340 (11th Cir. 2002). As the Supreme

Court has reflected, "with probable cause, . . . we deal with probabilities . . . . These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 175 (1949).

To begin with, Hobbs had good reason to approach plaintiff, to attempt to communicate with him, and to enter plaintiff's vehicle in order to secure the safety of the area. After all, plaintiff's vehicle was lodged up against a sign, the engine was still running, and the car was in gear. Meanwhile, Hoolihan was slumped sideways over the vehicle console. Regardless of whether these facts might have provided probable cause to justify an arrest for driving under the influence, clearly the circumstances presented an emergency which Hobbs needed to address as a caretaker of the community.

> Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

Cady v. Dombrowski, 413 U.S. 433, 441 (1973) (upholding warrantless search of disabled vehicle). See also Winters v. Adams, 254 F.3d 758, 764 (8th Cir.2001) (even absent reasonable suspicion, officers were justified in detaining possibly intoxicated individual who had locked himself in his car as part of their community caretaking function).

Once Hobbs entered the vehicle and encountered plaintiff's violent physical resistance, probable cause existed for plaintiff's arrest. See O.C.G.A. § 16-5-23 (making it a crime for a person to intentionally make physical contact of an insulting or provoking nature with the person of another); O.C.G.A. § 16-10-24 (making it a crime for a person to knowingly and willfully obstruct or hinder any law enforcement officer in the lawful discharge of his official duties).

Hobbs was not aware of any explanation or lawful justification for plaintiff's actions. (Hobbs Decl., par. 20.) Further, Hobbs saw nothing on plaintiff's person or on his vehicle which would have given him a hint of plaintiff's medical conditions. (Hobbs Decl., pars. 17-19.) Even if Hobbs had seen a medical decal on plaintiff's car, and somehow could have discerned -- from outside of the vehicle -- that plaintiff was experiencing a diabetic episode, this fact would not be enough to defeat probable cause. While a reasonable investigator "should consider a suspect's explanation in evaluating the existence of probable cause, he is under no

obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest if the facts as initially discovered provide probable cause." Williams v. City of Homestead, Fla., 206 Fed. Appx. 886, 888-89 (11th Cir. 2006) (internal quotation marks and citation omitted); accord Marx v. Gumbinner, 905 F.2d at 1507 n.6 (defendant officers "were under no obligation to give credence to [plaintiff's] theory" and "were not required to forego arresting [plaintiff] based on initially discovered facts showing probable cause simply because [plaintiff] offered a different explanation").

"Although it might be unfortunate that the Plaintiff was mistaken for being intoxicated while in the throes of a hypoglycemic attack, it is undeniable that he was in an altered state, and it was therefore reasonable and prudent for the Officers to detain the Plaintiff." Gruver v. Borough of Carlisle, 4:CV 05-1206, 2006 WL 1410816, *5 (M.D. Pa. May 19, 2006). See also, Bacci v. Fairway Mkt., 06 CIV.2407 DAB, 2008 WL 2139132, *7 (S.D.N.Y. May 19, 2008) (granting summary judgment to defendants on Section 1983 false arrest claim where plaintiff was having a hypoglycemic attack and was disoriented when he shoplifted groceries); Estrada v. Torres, 646 F. Supp. 2d 253, 259 (D. Conn. 2009) (concluding that "onset of Plaintiff's hypoglycemia is not inconsistent with the actions that gave rise to probable cause, and indeed Plaintiff could have both

intended to steal the glasses and also had hypoglycemia").  Here, it is undisputed that plaintiff was physically combative with both Hobbs and Kendle.  Accordingly, probable cause existed for plaintiff's arrest.

### 2.   Reasonable Use of Force

Just as plaintiff's physical resistance provided probable cause for his arrest, it also justified the degree of force which Hobbs used to subdue plaintiff.  Claims of excessive force are governed by the reasonableness standard of the Fourth Amendment.  Graham v. Connor, 490 U.S. 386 (1989).[2]  Reasonableness under the Fourth Amendment turns on "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intention or motivation." Graham, 490 U.S. at 397.

In determining whether the force utilized to effect a seizure was "objectively reasonable," the court must evaluate a number of factors, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.  In applying these factors, the Graham Court provided the following guidance when reviewing excessive force claims:

---

[2]   Graham involved a diabetic arrestee who claimed that officers had used excessive force against him.  Because the lower courts mistakenly analyzed the claim under substantive due process standards, the Supreme Court did not decide whether the officers' actions violated the Fourth Amendment.  490 U.S. at 399.

> **The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.** . . . . With respect to a claim of excessive force, the same standard of reasonableness at the moment applies:  Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.  **The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.**

<u>Graham</u>, 490 U.S. at 396-97 (emphasis added; internal quotations and citations omitted).   Where the material facts are undisputed, reasonableness under the Fourth Amendment is a matter of law for the court to resolve:

> [T]he process of finding historical facts, a function of the jury, [cannot be confused with] the distinct process of determining whether those historical facts constitute a . . . fourth amendment violation, a function of the court. . . .  In a case such as this, where the historical facts are undisputed, it is the court's duty to decide, as a matter of law, whether the facts support the appellants' constitutional claim.

<u>O'Neal v. DeKalb County</u>, 850 F.2d 653, 657, n.6 (11th Cir. 1988) (citing <u>Tennessee v. Garner</u>, 471 U.S. 1, 8 (1985)).

The "'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." <u>Graham</u>, 490 U.S. at 397.  Thus, a plaintiff does not create a

genuine issue of material fact by questioning the subjective motives and intentions of the officers, as these are irrelevant:  "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional."  Id.

Perspective is also crucial to this analysis.  "The only perspective that counts is that of a reasonable officer on the scene at the time the events unfolded."  Garczynski v. Bradshaw, 573 F.3d 1158, 1166 (11th Cir. 2009).  As applied to this case, the Graham factors show that the force applied by Hobbs was reasonable and proportionate to the need for that force.  Plaintiff had committed a serious crime by punching Hobbs and was an immediate threat to the officers' safety when he did so.  Throughout plaintiff's struggle with the officers, plaintiff was attempting to evade arrest.  In light of these factors, Hobbs was justified in applying one or two closed-hand strikes to plaintiff's face while plaintiff was punching him inside the car.  (Hobbs Decl., pars. 9-10.)  Further, it was reasonable for Hobbs to employ an elbow strike when plaintiff grabbed Hobbs' left arm, twisted it, and tried to pull it under his torso during the struggle outside the car.  (Hobbs Decl., pars. 13-15.)  Once plaintiff allowed himself to be handcuffed, there was no further force applied.  (Hobbs Decl., par. 15.)   The law of this circuit confirms the

reasonableness of the force applied by Hobbs.  See, e.g., <u>Benton v. Hopkins</u>, 190 Fed. Appx. 856, 860 (11th Cir. 2006) (concluding that multiple baton strikes to the legs and neck of an unarmed resisting arrestee were not excessive).

It is unreasonable to expect an officer, in the midst of a tense and rapidly-evolving situation, to diagnose a violent arrestee's diabetic condition and to apply a less-than-reasonable amount of force in light of it.  See, e.g., <u>Gruver v. Borough of Carlisle</u>, 4:CV 05-1206, 2006 WL 1410816, *5 (M.D. Pa. May 19, 2006) (handcuffing and tasering individual suffering hypoglycemic attack did not constitute excessive force when done after individual appeared disoriented, struggled against officers, and appeared to be walking into oncoming traffic).  Because the force applied by Hobbs was reasonably justified by the objective fact of plaintiff's physical resistance, plaintiff's excessive force claim fails as a matter of law.

### 3.    Conspiracy

Plaintiff claims that Hobbs and Kendle engaged in a "conspiracy to cover-up their false use of their arrest powers, and their excessive force upon Plaintiff." (First Amd. Compl., par. 44.)   But it is not enough simply to allege in the complaint that a conspiracy existed, as plaintiff has done here.  <u>Fullman v. Graddick</u>, 739 F.2d 553, 557 (11th Cir. 1984).  Rather, to maintain a conspiracy

claim under section 1983, a plaintiff must show (1) that the parties had a "meeting of the minds" or reached an understanding to violate the plaintiff's rights and (2) an actionable wrong to support the conspiracy.   Bailey v. Board of County Commissioners of Alachua County, Fla., 956 F.2d 1112, 1122 (11th Cir. 1992).

Here, in the absence of an underlying constitutional violation, plaintiff's conspiracy claim fails.  Hadley v. Gutierrez, 526 F.3d 1324, 1332 (11th Cir. 2008) ("[T]o sustain a conspiracy action under § 1983 ... a plaintiff must show an underlying actual denial of [his] constitutional rights.") (citations omitted). Further, plaintiff's complaint "fails to explain what constitutional right the alleged cover-up infringed" upon.  Id. at 1332.  In any event, plaintiff has adduced no evidence of conspiratorial conduct.  As a result, Hobbs is entitled to summary judgment as to this claim.

### 4.    Qualified Immunity

Plaintiff's federal claim against Hobbs is further barred by qualified immunity.  The doctrine of qualified immunity shields government officials from liability to the extent that "their conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Only in exceptional cases will government

actors have no shield against claims made against them in their individual capacities.  Id.

The Eleventh Circuit has articulated a two-part test for determining whether an officer is engaged in a discretionary function for purposes of qualified immunity: (1) whether the employee was performing a legitimate job-related function or pursuing a job-related goal, (2) through means that were within his power to utilize.  Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004).  This test is applied in the broad sense and does not depend on the legality of the officer's alleged acts.  The Eleventh Circuit has elaborated that:

> [T]he inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act. Framed that way, the inquiry is no more than an untenable tautology. In applying each prong of this test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances.

Holloman, 370 F.3d at 1265 (internal quotation marks omitted).  Put another way, it is the court's duty to examine the defendant's actions at the lowest possible level of generality necessary to remove the constitutional taint.  Holloman, 370 F.3d at 1266; see also, Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988) (finding that the defendant acted within his discretionary authority not because his duties included submitting *illegal* probable cause affidavits, but because his authority

13

encompassed submitting probable cause affidavits *in general*).  The "discretionary action" element is met in this case because Hobbs' actions fell within the scope of his job responsibilities.  Holloman, 370 F.3d at 1265.  Thus, Hobbs is eligible for qualified immunity.

In order to overcome qualified immunity, a plaintiff has the burden to establish that a defendant's conduct violated a **clearly established** statutory or constitutional right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  In this case, the law can be clearly established for qualified immunity purposes only by decisions of the United States Supreme Court, the Eleventh Circuit Court of Appeals, or the Georgia Supreme Court.  Jenkins v. Talladega City Bd. of Educ., 115 F.3d 821, 823 n.4 (11th Cir. 1997) (en banc).  To determine whether the law was clearly established, a court must look at whether the state of the law at the time of the action gave "fair and clear warning" to a reasonable person that their actions were unconstitutional.  Hope v. Pelzer, 536 U.S. 730, 746 (2002); see also, United States v. Lanier, 520 U.S. 259, 265 (1997) ("To make the warning fair, so far as possible the line should be clear.").

As to plaintiff's Section 1983 claim against Hobbs for false arrest, the standard of "[a]rguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry." Jones v. Cannon, 174 F.3d 1271,

1283 n. 3 (11th Cir. 1999). The standard of "arguable probable cause" is met when "reasonable officers in the same circumstances and possessing the same knowledge as the [defendant] **could have believed that probable cause existed to arrest**." Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002) (emphasis added; quotation marks omitted). Indeed, "arguable probable cause" is "all that is required for qualified immunity to be applicable to an arresting officer." Scarbrough v. Myles, 245 F.3d 1299, 1302 (11th Cir. 2001) (per curiam). This standard recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause. "Indeed, it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable." Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990) (punctuation omitted).

Similarly, in cases where excessive force is alleged, the standard for qualified immunity is quite different from the substantive Graham reasonableness inquiry:

> [Under Graham, if] an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed.
>
> The qualified immunity inquiry, on the other hand, has a further dimension. The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the

15

> legal constraints on particular police conduct. It is sometimes
> difficult for an officer to determine how the relevant legal
> doctrine, here excessive force, will apply to the factual situation
> the officer confronts. An officer might correctly perceive all of
> the relevant facts but have a mistaken understanding as to
> whether a particular amount of force is legal in those
> circumstances. If the officer's mistake as to what the law
> requires is reasonable, however, the officer is entitled to the
> immunity defense.

Saucier, 533 U.S. at 205.

The Supreme Court summed up the distinction between the Graham

reasonableness standard and the qualified immunity standard as follows:

> Officers can have reasonable, but mistaken, beliefs as to the
> facts establishing the existence of probable cause or exigent
> circumstances, for example, and in those situations courts will
> not hold that they have violated the Constitution. Yet, even if a
> court were to hold that the officer violated the Fourth
> Amendment, . . . Anderson still operates to grant officers
> immunity for reasonable mistakes as to the legality of their
> actions. The same analysis applies in excessive force cases,
> where in addition to the deference officers received on the
> underlying constitutional claim, qualified immunity can apply
> in the event the mistaken belief was reasonable.

Id. at 206. Additionally, "because this standard establishes no bright line, qualified

immunity applies unless application of the standard would inevitably lead every

reasonable officer . . . to conclude the force was unlawful." Post v. City of Fort

Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993), modified on other grounds, 14

F.3d 583 (11th Cir. 1994) (emphasis added).

As addressed above, the relevant case law in this circuit confirms that Hobbs acted lawfully.  Because plaintiff cannot sustain the burden of citing controlling and materially similar case law that would establish otherwise, Hobbs is entitled to qualified immunity.

**B.**   **State Law Claims**

**1.**   **Battery**

Plaintiff's battery claim is without merit because Hobbs' actions were legally justified.  <u>See</u> O.C.G.A. § 51-11-1 ("If the defendant in a tort action was authorized to do the act complained of, he may plead such authorization as justification."); O.C.G.A. § 51-11-9 (stating that person justified in using force to defend self or others cannot be held civilly liable).  Here, force was reasonably applied to subdue plaintiff, who was punching and kicking Hobbs.  "One who acts in self-defense does not act with the tortious intent to harm another, but does so for the non-tortious purpose of defending himself."  <u>Kidd v. Coates</u>, 271 Ga. 33, 34, 518 S.E.2d 124, 125 (1999); <u>see also</u>, <u>Haile v. Pittman</u>, 194 Ga. App. 105, 389 S.E.2d 564 (1989) (holding that physical contact in the course of lawful arrest is not actionable as battery).  Put another way, "an officer does not lose the right to defend himself when he acts in his official capacity."  <u>Kidd</u>, 271 Ga. at 33, 518 S.E.2d at 125 (holding that officer who shot a suspect in self-defense was shielded

by official immunity).   Because Hobbs' use of force was justified under the circumstances, plaintiff's battery claim fails as a matter of law.

### 2.    False Imprisonment

The intentional tort of false imprisonment is defined as "the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." O.C.G.A. § 51-7-20. The essential elements of the claim are the arrest or detention and the unlawfulness thereof.   <u>Arbee v. Collins</u>, 219 Ga. App. 63, 66, 463 S.E.2d 922 (1995).  To be lawful, a warrantless arrest must be made with probable cause and pursuant to one of the exigent circumstances set forth in O.C.G.A. § 17-4-20(a). <u>Arbee</u>, 219 Ga. App. at 66, 463 S.E.2d 922.

For the reasons explained above, probable cause existed for plaintiff's arrest. Moreover, plaintiff's arrest and detention were warranted by two categories of exigent circumstances.  A warrantless arrest is legal "if the offense is committed in such officer's presence or within such officer's immediate knowledge" or "if there is likely to be failure of justice for want of a judicial officer to issue a warrant." O.C.G.A. § 17-4-20(a).  Clearly, the first circumstance was present here because plaintiff's combativeness with Hobbs and his refusal to comply with Hobbs' lawful commands were within Hobbs' immediate knowledge.

Exigent circumstances also existed because a failure of justice would have likely resulted if plaintiff had not been arrested.  In <u>Durden v. State</u>, 250 Ga. 325, 326, 297 S.E.2d 237 (1982), the Georgia Supreme Court addressed the "failure of justice" circumstance in O.C.G.A. § 17-4-20(a).  The court concluded that when an officer acquires probable cause to make a valid warrantless arrest, then exigent circumstances also exist for a warrantless arrest under O.C.G.A. § 17-4-20(a). <u>Durden</u>, 250 Ga. at 326, 297 S.E.2d 237.  Because both probable cause and exigent circumstances existed, plaintiff's arrest was lawful.

**3.     Intentional Infliction of Emotional Distress**

Plaintiff has not adduced evidence to support any element of his claim for intentional infliction of emotional distress.  The elements of such a claim are: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe. <u>Johnson v. Savannah College of Art & Design</u>, 218 Ga. App. 66, 66, 460 S.E.2d 308 (1995).

This claim fails because Hobbs' conduct was not extreme and outrageous. <u>See</u> <u>Gordon v. Frost</u>, 193 Ga. App. 517, 521, 388 S.E.2d 362 (1998) (whether claim rises to requisite level of outrageousness and egregiousness to sustain a

claim for intentional infliction of emotional distress is initially a question of law).

Further, plaintiff has adduced no evidence that he suffered severe emotional

distress as a result of Hobbs' conduct.  (Hoolihan Depo., pp. 19-21, 145.)  Because

plaintiff has failed to adduce evidence in support of the necessary elements of this

claim, Hobbs is entitled to judgment in his favor.

### 4.    Official Immunity

All state law claims brought against Hobbs are further barred by the doctrine

of official immunity.[3]  The doctrine of official immunity provides that "while a

public officer or employee may be personally liable for his negligent ministerial

acts, he may not be held liable for his discretionary acts unless such acts are

willful, wanton, or outside the scope of his authority."  Gilbert v. Richardson, 264

Ga. 744, 752, 452 S.E.2d 476, 482 (1994) (citation omitted); see also Murphy v.

Bajjani, 282 Ga. 197, 198, 647 S.E.2d 54, 65-57 (2007).  As stated by the Georgia

Court of Appeals, "a public officer or employee may be personally liable only for

ministerial acts negligently performed or acts performed with malice or an intent to

injure."  Golden v. Vickery, 285 Ga. App. 216, 217, 645 S.E.2d 695, 696 (2007).

---

[3] Whether a defendant, in his individual capacity, is entitled to official immunity is a question of law that must be decided by the court as a "threshold issue." Cameron v. Lang, 274 Ga. 122, 124, 549 S.E.2d 341, 345 (2001).

"A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty.  A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." Kelly v. Lewis, 221 Ga. App. 506, 508, 471 S.E.2d 583, 587 (1996). "Generally, the determination of whether an action is discretionary or ministerial depends on the character of the specific actions complained of, not the general nature of the job, and is to be made on a case-by-case basis." Wright v. Ashe, 220 Ga. App. 91, 93, 469 S.E.2d 268, 270-71 (1996).

Here, Hobbs' decisions with regard to arresting plaintiff and Hobbs' use of force were plainly discretionary in nature.  Delong v. Domenici, 271 Ga. App. 757, 758, 610 S.E.2d 695, 698 (2005).  Thus, Hobbs can only be held liable if plaintiff adduces evidence that he acted with actual malice.  In the context of official immunity, "actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact." Adams v. Hazelwood, 271 Ga. 414, 414-15, 520 S.E.2d 896, 898 (1999) (internal citations and punctuation omitted).  Simply sprinkling the complaint with bare allegations of malice does not suffice to strip an official of his official immunity, without some evidentiary support for such

allegations. <u>See Davis v. Dublin City Bd. of Ed.</u>, 219 Ga. App. 121, 122, 464 S.E.2d 251, 252 (1995).

Here, Hobbs was performing a discretionary function when he encountered plaintiff, and there is no evidence that Hobbs acted with a deliberate intention to do wrong. Accordingly, he is entitled to official immunity as a matter of law.

## III.   CONCLUSION

For the foregoing reasons, plaintiff cannot establish that Hobbs violated his constitutional rights or committed any state law tort against him. Plaintiff's claims against Hobbs are further barred by immunity doctrines. Accordingly, Hobbs is entitled to summary judgment in his favor as to all of plaintiff's claims.

Respectfully submitted,

**FREEMAN MATHIS & GARY, LLP**

*/s/ Brian R. Dempsey*
Jack R. Hancock
Georgia Bar No. 322450
jhancock@fmglaw.com
Brian R. Dempsey
Georgia Bar No. 217596
bdempsey@fmglaw.com

661 Forest Parkway
Suite E
Forest Park, Georgia 30297
(404) 366-1000 (telephone)
   (404) 361-3223 (facsimile)          Attorneys for Defendant Michael Hobbs

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), the undersigned counsel hereby certifies that the foregoing memorandum of law was prepared in Times New Roman 14-point font, in compliance with Local Rule 5.1(C).

This 18th day of August, 2011.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Brian R. Dempsey*
Brian R. Dempsey
Georgia Bar No. 217596
bdempsey@fmglaw.com

661 Forest Parkway
Suite E
Forest Park, Georgia 30297
(404) 366-1000 (telephone)
(404) 361-3223 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MICHAEL W. HOBBS' MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Stacy Dane Barnett, Esq.
The Barnett Law Firm
181 East Main Street
Canton, Georgia 30114
Barnettlawfirm@gmail.com

Marc Avidano, Esq.
Smith Welch Webb & White, LLC
2200 Keys Ferry Court
McDonough, Georgia 30253
mavidano@smithwelchlaw.com

Andrew Gebhardt, Esq.
Smith Welch Webb & White, LLC
280 Country Club Drive, Suite 200
Stockbridge, Georgia 30281
agebhardt@smithwelchlaw.com

Rory K. Starkey. Esq.
The Starkey Law Firm, LLC
44 Broad Street, Suite 711
Atlanta, Georgia 30303
rkstarkey@ureach.com

This 18th day of August, 2011.

**FREEMAN MATHIS & GARY, LLP**


*/s/ Brian R. Dempsey*
Brian R. Dempsey
Georgia Bar No. 217596
bdempsey@fmglaw.com

661 Forest Parkway
Suite E
Forest Park, Georgia 30297
(404) 366-1000 (telephone)
(404) 361-3223 (facsimile)

L:\DOCS\3000\00379\00045717.DOC