**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| BRIAN HOOLIHAN, )<br>)<br>Plaintiff, )<br>)<br>)<br>)<br>)<br>CLAYTON COUNTY, GEORGIA, )<br>DAVID S. KENDLE, )<br>MICHAEL W. HOBBS, )<br>JOHN DOE, JANE DOE )<br>)<br>Defendants. ) | CIVIL ACTION NUMBER<br>1:10-cv-1753-**WBH** |

## DEFENDANT KENDLE'S

## STATEMENT OF UNDISPUTED MATERIAL FACTS

**COMES NOW**, Officer Kendle, by and through The Starkey Law Firm, pursuant to Local Rule 56.1 (B) files his separate, concise, numbered statement of material facts to which Officer Kendle contends there is no genuine issue for trial.

1.

The plaintiff in the instant matter was approached based on a suspicion of DUI (O.C.G.A. 40-6-391), and subsequently arrested for Obstruction of Officers (O.C.G.A 16-10-24) and Battery on Police Officers (O.C.G.A. 16-05-23). (Plaintiff's Exhibit 6, Plaintiff's Exhibit 12A & 12B; Deposition of Officer Hobbs,

P. 57-79 generally and P. 98-99 specifically and Deposition of Officer Kendle, P. 85-90. )

2.

Officer Kendle and Officer Hobbs observed the plaintiff slumped over the steering wheel of a car parked sideways with its lights running and its gear shift in "Drive" at 1:45 in the morning. (Plaintiff's Exhibit 6, Marked & Identified in Mr. Kendle's Deposition at P. 69 and Hobbs' Deposition at P. 70; **see** specifically page one of report, event section for incident time and pages 2 of 3, 3 of 3 and page 1 of 1 [ supplement to report] for officer's description of event; **see also**, Officer Hobbs Deposition, P. 99)

3.

The Officers attempted to get the plaintiff's attention by tapping on the driver's side window. The Plaintiff spoke to the officers in a slurred and/or mumbled manner and would not unlock the door or roll the window down further. (Hobbs Deposition, P. 57, L 19-25 and P. 58-79 and Kendle Deposition, P. 21, L 6-25; P.22, L1-19).

4.

Plaintiff has no independent memory of the event that gave rise to his lawsuit and more specifically, the following question and answer exchange took place between counsel for Kendle and Plaintiff:

Q. "Hoolihan looked at him several times, however, was not—was not able to speak. Hobbs state he thought the guy was intoxicated or had a stroke. After several attempts to get Hoolihan to unlock to unlock the door he decided to break the back window." Do you have any independent memory of that assessment or that perception?

**A.** **No, Sir.**

Q. Any reason to dispute its accuracy?

**A.** **No, sir.**

(Plaintiff's Deposition, P. 151, L 12-22)

5.

Plaintiff has no independent memory of the event that gave rise to his lawsuit and more specifically, the following following question and answer exchange took place between counsel for Kendle and Plaintiff:

Q. "….Now, you've testified on record, you've placed it in your anti litem notice and other places that you have no independent memory of the event; is that accurate?
A. **That is accurate.**

> Q. And that is still your testimony?
>
> A. **That is still my testimony.**

(Plaintiff's Deposition, P. 152, L 1-7)

6.

The Plaintiff was not was compliant with Officer Hobbs' requests that he stop resisting. (Officer Hobbs Deposition, P. 112-113).

7.

At all times hereto Officers Kendle and Hobbs used only the force necessary to 1) get the plaintiff, who appeared to be intoxicated, from behind the wheel of a stopped car still in "drive" onto the sidewalk and 2) subdue a combative arrestee long enough to place handcuffs on him. (Officer Hobbs Deposition, P. 57-112)

8.

Plaintiff admitted that he had no specific knowledge of any particular officer hitting him or otherwise using excessive force. (Plaintiff's Responses to Officer's Request for Admissions 6)

9.

Plaintiff admitted that he had no recollection of Officer Kendle participating in an arrest of him. (Plaintiff's Responses to Officer's Request for Admissions 7)

10.

When officer Hobbs reached in the vehicle to unlock and open the door Plaintiff became combative. (Plaintiff's Deposition, P. 151, L 8-25; and P. 153, L 1-3).

11.

During an attempt to gain access to the car and secure Plaintiff's safety Plaintiff punched and twisted Hobbs arm. ( P. 151, L 8-25; and P. 153, L 1-3).

12.

After giving loud verbal commands and in an attempt to counter Plaintiff's aggression and violence towards him, Officer Hobbs delivered a couple of blows to get Hoolihan off of him. ( P. 151, L 8-25; and P. 153, L 1-3).

13.

Officer Hobbs advised Hoolihan to calm down and instructed Officer Kendle to unlock the doors. Plaintiff's Deposition (P. 151, L 8-25; and P. 153, L 1-3).

14.

Plaintiff's **Anti Litem Notice** (Defendants' Exhibit 3, ¶ 3 & 4 ), in relevant part states:

"…My only recollection of this incident was waking up in an ambulance and being told I was taken to Southern Regional Medical Center…"

"… I do not recall the officers saying anything to me either before or after my transport to the hospital…"

15.

Plaintiff, during the course of his deposition, was unable to-due to lack of independent memory or recollection-dispute the validity, accuracy or veracity of the following Defendants' exhibits: Defendants' Exhibit 3 (Plaintiff's Anti Litem Notice); Exhibit 4 (Clayton County Internal Affairs Summary); Exhibit 5 (Officer Hobbs's Use of Force Report; and Exhibit 6 (Officer Kendle's Supplemental

Report). Each of these documents accounted the detail of the events in corroboration with Officer Hobbs and Kendle's deposition testimony. (Plaintiff's Deposition, P. 145-171).

16.

Officer Kendle, at the time of the subject event, was a trainee and Officer Hobbs made the decision to bring the charges and directed Officer Kendle to write the tickets. (Plaintiff's Exhibit 4, Employment History Section where is indicates that Officer Kendle started with Clayton County PD on January 12, 2009 and ended on March 12, 2009; and Deposition Testimony of Officer Kendle, P. 100, L 17-25, P. 101, L 1-10; Deposition Testimony of Officer Hobbs where he specifically testified that he directed that the charges be written and that he delivered them to the Plaintiff, Hobbs Deposition, P. 98-100; and Plaintiff's Exhibit 12).

17.

Plaintiff was not prosecuted. Plaintiff's complaint neither in its general averments nor in his specific count alleging malicious prosecution never alleged that there was a prosecution. (Plaintiff's 1st Amended Complaint)

18.

Plaintiff during discovery never proved or submitted any evidence or gave any testimony that he was prosecuted. (Plaintiff's Deposition generally; and Plaintiff's Responses to Defendant David S. Kendle's First Interrogatories, Request for Production of Documents and Request For Admissions).

19.

On February 5th, 2009, at approximately 1:45 in the morning Officers Kendle and Hobbs were traveling on their patrol route and observed a lone unmoving car of Plaintiff in the parking lot of a strip mall. The entire area was very quiet, with no other persons present, nor traffic on the road, nor other parked cars in the strip mall parking lot. (Deposition of Officer Hobbs, P. 57-79).

20.

The officers turned into the strip mall to further observe the Plaintiff's car. Plaintiff's car appeared to be suspicious based on a number of factors. (Deposition of Officer Hobbs, P. 20-22, 39, 40, 44, 58,).

21.

First the car was not parked evenly in a parking space; it was situated up on a handicap sign and if it had run up on the sign suspiciously with its lights still on Additionally the engine was still running. Id.  Based on these observations, Officer Hobbs radioed in a suspicious vehicle. He made this radio call prior upon his arrival to the scene. (Deposition of Officer Hobbs, P. 20-22).

22.

Officer Kendle and Hobbs both got out of their patrol car and went to the driver side window of Plaintiff's car.  At this point they observed that car was still in drive. (Deposition of Officer Hobbs, P. 54, L 20-22). Hobbs then instructed Kendle to pull the patrol car behind Plaintiff's car in order to pin the car so that Plaintiff's car could not go in reverse and cause any type of additional harm. (Deposition of Officer Hobbs, P. 67, L 16-18).

23

Once Kendle was finished parking the car, he joined Officer Hobb's again at Plaintiff's car.  As Hobbs was standing at the passenger side window, he tapped

on the Plaintiff's window to get his attention and he asked Plaintiff to roll down his window.  Plaintiff responded with slurred incomprehensible speech and did not unlock his car doors or roll down his window.  Plaintiff was slumped over the steering wheel and gear console of his car. (Deposition of Kendle, P. 21, L. 6-19) Plaintiff appeared to be in a drunken state. ( Deposition of Kendle, P. 24, L. 6; Deposition of Hobbs, P. 39, L 14-15).

24.

Officer Kendle did not observe any type of `medical alert stickers or other indicators on Plaintiff or on his car. (Deposition of Officer Kendle, P. 52, L22-25, P. 83-84.  And when Plaintiff was asked whether or not described the medical alert sticker has having faded in the sun he testified that "he probably did." (Plaintiff's Deposition.  P. 162)

25.

After several attempts to get Plaintiff to unlock his vehicle, Officer Hobbs broke the back driver side window with his ASP baton.  Officer Hobbs needed to make entry into Plaintiff's to put the car in park. (Deposition of Hobbs, P. 113,  L. 24-25).  When Hobbs reached into the car after breaking the back driver side

window , he reached for the floor shift console. As Officer Hobbs was reaching for the console to put the car in park, Plaintiff spun toward Officer Hobbs and began grabbing hims. (Deposition of Kendle, P. 26, L. 17-20; Deposition of Hobbs, P. 69, L 1-2).

26.

Officer Kendle went to the front passenger door and entered the car. When Plaintiff grabbed Officer Hobbs, Hobbs elbowed Plaintiff and gave Plaintiff several verbal commands to stop. (Deposition of Kendle, P. 27, L 3-4; L 18-23, P. 29, L. 5-8, P. 75, L. 3-5).

27.

Plaintiff kept fighting after the officers gave him verbal commands to stop. Id.

28.

At this point, Hoolihan's upper torso was leaning towards the passenger side window and his body was facing the back of his car. Id.

29.

Plaintiff began to kick Officer Hobbs. (Deposition of Kendle, P. 76, L. 10-25). Officer Hobbs gave Plaintiff two closed handed strikes to Plaintiff's face (Deposition of Kendle, P. 75, L. 17-18.

30.

Officer Kendle was attempting to grab Plaintiff to pull him out of the car. Plaintiff continued to resist the officers, grabbing at Kendle's arm. Officer Kendle grabbed Plaintiff by the shoulders to pull Plaintiff out of the car. As Kendle pulled the still struggling Plaintiff out of the car, Hoolihan landed on his face on the ground. ( Deposition of Kendle, P. 88 L. 4-5).

31.

Kendle attempted to get Plaintiff's hands to handcuff him, and Plaintiff continued resisting giving Kendle his hands. (Deposition of Kendle, P. 88, L. 11-18).

32.

Kendle's only physical interaction with Plaintiff was to pull him out of the car and secure him in handcuffs. (Deposition of Kendle, P. 88, L. 4-5).

33.

Officer Hobbs came around to car to assist Kendle with securing the handcuffs on Plaintiff ( Depostion of Hobbs, P. 57-79).

34.

Kendle put his knees onto the backside of Plaintiff and successfully secured the handcuffs on Plaintiff. (Deposition of Kendle, P. 90)

35.

There were no further strikes to Plaintiff after he was secured in the handcuffs. (Deposition of Kendle, P. 29, L12-19).

36.

Plaintiff is unable to dispute any accounts of Defendant Officers use of force or what caused the necessity to use of force. Consider the following request for admissions and deposition excerpts:

**Request to Admit # 6**

You have no specific memory or knowledge of any particular officer hitting you or otherwise using excessive force.

**Admitted.**

**Request to Admit # 7**

You have no recollection f David S. Kendle participating in an arrest of Plaintiff.

**Admitted.**

(Plaintiff's Responses to Defendant Kendle's First Interrogatories, Request for Production of Documents and Request for Admissions).

Also, consider relevant deposition excerpts of Plaintiff:

> Q. So when Hobbs states he reached in the vehicle to unlock and open the door and as he did Hoolihan became combative, you are not able to dispute that are you?
>
> A. **No.**
>
> Q. He kicked, punched and twisted Hobb's arm. Are you able to dispute that?
>
> A. **No sir.**
>
> Q. Hobbs state at this point he was not sure what was going on, so he delivered a couple of blows to get Hoolihan off of him. Do you have any reason to dispute that?
>
> A. **No.**
>
> Q. He is advising Hoolihan to calm down and telling Kendle to unlock the other doors. Any reason to dispute that?
>
> A. **No.**

Plaintiff's Deposition (P. 151, L 8-25; and P. 153, L 1-3).

**WHEREFORE,** Officer Kendle prays that this motion for summary judgment be granted.

This 18th day of August 2011.

**RESPECTFULLY SUBMITTED,**

/s/ *Rory K. Starkey*
Rory K. Starkey
Georgia Bar No. 676450
Attorney for Plaintiff John Williams

**The Starkey Law Firm, LLC**
44 Broad Street, N.W., Suite 711
Atlanta, Georgia 30303
(404) 572-9911 (telephone)
(404) 572-9974  (facsimile)
rkstarkey@ureach.com