## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

BRIAN HOOLIHAN,

      Plaintiff,

       v.

CLAYTON COUNTY, GEORGIA;
DAVID S. KENDLE; MICHAEL W.
  HOBBS; JOHN DOE; and JANE DOE,

      Defendants.

CIVIL ACTION
No. 1:10-cv-01753-SCJ

## O R D E R

In this action under 42 U.S.C. § 1983, Plaintiff Brian Hoolihan seeks compensatory and punitive damages for violations of his constitutional and statutory rights stemming from the actions of Clayton County Police Officers, Officers Michael W. Hobbs and David S. Kendle.  This matter is before the Court motions for summary judgment by Officer Hobbs's [Doc. No. 70], by Clayton County [Doc. No. 71], and by Officer Kendle [Doc. No. 72].

## I.    FACTUAL BACKGROUND

Brian Hoolihan is a diabetic.  He was returning home from work on February 5, 2009, when he became disoriented.[1]  On duty police officers, Officer Michael

---

[1] The facts related to the encounter between Mr. Hoolihan and Officers Hobbs and Kendle are gathered predominantly from Officers Hobbs and Kendle's Statements of Material Facts

Hobbs and Officer David Kendle[2] were on patrol when Officer Hobbs observed a car, later confirmed to be Mr. Hoolihan's, in a fitness center parking lot. It was approximately 1:45 a.m., and, as the fitness center parking lot was rarely occupied at that hour, Officer Hobbs drove toward the car. Officer Hobbs noticed that the car was not parked properly within the borders of a parking space and was lodged against a partially bent handicap parking sign. The vehicle was still running and the driver, later identified as Mr. Hoolihan, was slumped sideways over the console.

Officer Hobbs attempted to get Mr. Hoolihan's attention by tapping on the driver's-side window of the car and calling to him. While Mr. Hoolihan looked up at one point and his head bobbed, he was generally unresponsive and he mumbled incoherently in response to Officer Hobbs's questions. Officer Hobbs suspected that Mr. Hoolihan had been in a wreck or was under the influence of drugs or alcohol. Noticing that the car was still in "drive," Officer Hobbs's asked Mr. Hoolihan to put his car in "park" and to unlock the door. Mr. Hoolihan did not respond to Officer

---

("SMF") [Hobbs SMF, Doc. No. 70-1, ¶¶ 7– 21; Kendle SMF, Doc. No. 72-2, 19–35]. The encounter-related facts are undisputed; Mr. Hoolihan has no recollection of the events that transpired between the time he drove into the parking lot in question and the time he found himself in an ambulance [Doc. No. 70-3, 100:12–25].

[2] Officer Kendle is no longer employed with the Clayton County Police Department (CCPD). However, he is referred to as Officer Kendle in this order as he was a police officer of the CCPD at all times relevant to the incident at issue.

Hobbs's directive. On Officer Hobbs's instruction, Officer Kendle pulled the patrol vehicle directly behind, but not touching, Mr. Hoolihan's car to prevent Mr. Hoolihan's car from moving. Officer Hobbs then broke out the driver's-side back window of Mr. Hoolihan's car, unlocked the back door, and entered the car. From his position in the back of the car, Officer Hobbs attempted to unlock the driver's door and place the car in "park." Mr. Hoolihan turned toward Officer Hobbs and began punching him and grabbed his left arm and wrist. Once Officer Hobbs freed himself, Mr. Hoolihan began striking him in the shoulder area. Officer Hobbs loudly commanded Mr. Hoolihan to stop fighting, but when Mr. Hoolihan did not comply, Officer Hobbs struck Mr. Hoolihan in the face one or two times with his closed fist. The struggle in the car continued unabated with Mr. Hoolihan, having shifted his body in the seat, now beginning to kick Officer Hobbs. Officer Hobbs succeeded in pinning Mr. Hoolihan's feet between the front seats of the car, and, with Mr. Hoolihan having grabbed his left hand, managed to unlock the passenger-side front door with his right hand. At one point during the struggle, Officer Hobbs geared the car into "park."

Officer Kendle opened the passenger-side door and removed Mr. Hoolihan, who continued to struggle, from the car. Mr. Hoolihan landed on his face on the

ground.  While Officer Kendle had placed his knees on Mr. Hoolihan's back and was trying to handcuff him, the car rolled backwards.  Officer Hobbs then knelt down to help handcuff Mr. Hoolihan, who grabbed Officer Hobbs's arm, twisted it, and tried to pull it under Mr. Hoolihan's torso.  At that point, Officer Hobbs struck Mr. Hoolihan in the head with his elbow.  Mr. Hoolihan was then handcuffed and Officer Hobbs called for emergency medical help.

An ambulance arrived within minutes, and it was determined that Mr. Hoolihan had a "diabetic issue" [Doc. No. 82-7, 85:22–86:2].  Mr. Hoolihan recalls finding himself in an ambulance handcuffed to the stretcher.  Mr. Hoolihan had facial swelling, bruising around both his eyes, a laceration below the left eyebrow, bruising of his tongue, lacerations on his wrists, bruising on his ribs, abrasions on his knees, bruising on his right thigh [Doc. No. 82-1, Exhibit 1–8].  Mr. Hoolihan alleges that, as a result of the force used on him, he suffers from "floaters" in his eye [Doc. No. 76, 137:3–9] and at times he has difficulty remembering the type of information he was able to remember before the incident.  For example, Mr. Hoolihan could not remember his zip code one day; if he is given a telephone number he wants to remember, he now has to write it down because he is not able to memorize the number and recall it later; and he has trouble recalling

conversations [*Id.* at 20:15–21:6, 22:5–13].

As a result of the altercation, Mr. Hoolihan was cited with simple battery (O.C.G.A. § 16-5-23) and obstruction (O.C.G.A. § 16-10-24) [Doc. No. 74, Pl's Exhibits 12-A and 12-B]. Those charges were later dismissed. On June 7, 2010, Mr. Hoolihan filed this § 1983 action seeking damages stemming from Officers Hobbs and Kendle's alleged violation of his Fourth and Fourteenth Amendment rights (Count I). Specifically, Mr. Hoolihan alleges that he was subjected to deadly force and arrested without probable cause. Mr. Hoolihan also asserts the following claims against Officers Hobbs and Kendle: (1) conspiracy (Count IV); (2) battery (Count IV);[3] (3) false imprisonment (Count V);[4] and (4) intentional infliction of emotional distress (Count VI);[5] and (5) malicious prosecution (Count VII). In Count II of the complaint, Plaintiff asserts liability against Clayton County for its alleged failure to properly train its police officers in the use of force, for failing to effectively check its

[3] Although battery is plead as a separate count, it is also labeled as Count IV in the operative complaint [Doc. No. 31, 14].

[4] Plaintiff has abandoned this claim against both Officers [Doc. Nos. 81, 1–2; Doc. No. 82, 1–2] and, thus, this claim is not addressed in the Court's analysis of Officers Hobbs and Kendle's motions for summary judgment.

[5] Plaintiff has abandoned this claim against both Officers [*Id.*]and, thus, this claim is not addressed in the Court's analysis of Officers Hobbs and Kendle's motions for summary judgment.

officers' propensity for violence, for failing to train its officers on how to determine when a citizen is suffering from a diabetes-related problem rather than under the influence of alcohol, and for its failure to implement a structure for risk containment and stress management with respect to its police force.  Plaintiff also alleges that Clayton County violated 42 U.S.C. §§ 12132, the Americans with Disabilities Act of 1990 ("ADA") in Count III.  Officer Hobbs, Officer Kendle, and Clayton County seek summary judgment as to Plaintiffs claims.  Below is the Court's analysis of the Defendants' motions.

## II.   ANALYSIS

### A.   LEGAL STANDARD

Federal Rules of Civil Procedure 56(a) provides "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movement is entitled to judgment as a matter of law."[6]

---

[6]  On December 1, 2010, an amended version of Rule 56 of the Federal Rules of Civil Procedure became effective.  The amendments to Rule 56 "are intended to improve the procedures for presenting and deciding summary-judgment motions" and "are not intended to change the summary-judgment standard or burdens."  Committee on Rules of Practice and Procedure, Report of the Judicial Conference, page 14 (Sept. 2009). *Farmers Ins. Exchange v. RNK, Inc.*, 632 F.3d 777, 782 n.4 (1st Cir. 2011).  "[B]ecause the summary judgment standard remains the same, the amendments 'will not affect continuing development of the decisional law construing and applying' the standard now articulated in Rule 56(a).  Accordingly, while the Court is bound to apply the new version of Rule 56, the undersigned will, where appropriate, continue to cite to decisional law construing and

A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996). Once the moving party has adequately supported its motion, the non-movant then has the

---

applying prior versions of the Rule." *Murray v. Ingram*, No. 3:10-CV-348-MEF, 2011 WL 671604, *2 (M.D. Ala. Feb. 3, 2011) (internal citations omitted).

burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no "genuine [dispute] for trial" when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id.* All reasonable doubts, however, are resolved in the favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

### B.   VIOLATION OF LOCAL RULE 56

In response to a number of facts supplied in the Defendants' statements of material facts, Hoolihan argues that the Court should not consider the facts as the form in which they are presented violates Local Rule 56. This Court's Rule on motions for summary judgment requires that a movant must submit a statement of material facts with the material facts numbered separately and supported by a citation to the record. LR 56.1 B. Limited portions of the Defendants' statements of material facts do not conform with the Rule as some of the facts are not separately numbered. However, the Court will not disregard those facts. "Local Rules . . . are designed to help the court identify and organize the issues in a case." *Fils v. City of Aventura*, 647 F.3d 1272, 1282–83 (11th Cir. 2011) (internal quotation marks omitted). Courts have broad discretion in interpreting and applying the local rules. *See id.*

-8-

Defendants' statements of facts provide concise and organized recitation of the facts. The grouping of some of the facts into a separately numbered paragraph, especially where the relevant citation to the record is provided within the paragraph, has not impeded the Court's analysis nor has the practice, as far as the Court can determine, leveled a particular hardship on Mr. Hoolihan's ability to respond effectively. As such, Mr. Hoolihan's objection is overruled.

### C.    CLAIMS AGAINST OFFICERS HOBBS AND KENDLE[7]

### 1.    EXCESSIVE FORCE AND FALSE ARREST (COUNT I)[8]

Asserting qualified immunity, Officers Hobbs and Kendle move for summary judgment against Mr. Hoolihan's § 1983 claim for use of excessive force and arrest without probable cause. Qualified immunity provides government officers with "immunity from suit," *Saucier v. Katz*, 533 U.S. 194, 200 (2001), "for torts committed

---

[7] While Officers Hobbs and Kendle have filed separate motions for summary judgment, the Court analyzes their motions together as, for the most past, the same arguments, or variants thereof, in support of summary judgment are raised in both motions. Additionally, Mr. Hoolihan asserts identical claims against the Officers arising from the same set of facts.

[8] The Court presumes that Mr. Hoolihan alleges only a violation of the Fourth Amendment as labeled in Count I of the complaint. To the extent Mr. Hoolihan seeks to establish a Fourteenth Amendment violation over the use of "excessive force in making an arrest, investigatory stop, or other 'seizure' of his person," such a claim is properly analyzed under the Fourth Amendment rather than the Fourteenth Amendment. *Graham v. Connor*, 490 U.S. 386, 388 (1989). And, here, the Court applies the Fourth Amendment standard to the excessive force claim.

while performing discretionary duties unless [the officers'] conduct violates a clearly established statutory or constitutional right." *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008)).  As an initial matter, it must be established that the Officers were performing a discretionary function.  *See id.*  Mr. Hoolihan does not dispute that Officer's Hobbs and Kendle were performing a discretionary function during the February 5th incident.  Moreover, the Court concludes that the Officers were performing a discretionary function when they approached and, later, arrested Mr. Hoolihan. Police officers have the power to effectuate arrests and to engage in searches and seizures.  The Officers were engaged in the exercise of those powers during their encounter with Mr. Hoolihan, and, thus were acting within their discretionary authority.  *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004) (explaining that an inquiry as to whether the defendant was performing a discretionary function is answered by determining whether, in view of the "general nature of the defendant's action," the defendant was engaged in a legitimate job-related function and pursuing that function in an authorized manner).  Since the Officers were acting within their discretionary authority, the burden shifts to Mr. Hoolihan to show that the Officers are not entitled to qualified immunity. *See Lewis*

-10-

*v. City of West Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009).

The next question in the qualified immunity inquiry is whether the conduct complained of violated a constitutional right. *Lewis*, 561 F.3d at 1291. If, based on the facts viewed "in the light most favorable to the party asserting the injury," it is established that the conduct at issue violated a constitutional right, then the court proceeds to determine "whether the right was clearly established." *Saucier*, 533 U.S. at 201. On the other hand, "[i]f no constitutional rights would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.*

Mr. Hoolihan alleges that he was arrested without probable cause. "Plainly, an arrest without probable cause violates the right to be free from an unreasonable search under the Fourth Amendment." *Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003). However, [i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). The probable cause requirement is met "where reasonable officers in the same circumstances and possessing the same knowledge as the [d]efendant could have believed that probable cause existed to arrest." *Case v.*

*Esling*er, 555 F.3d 1317, 1327 (11th Cir. 2009).  Even if an arrest occurred in the absence of probable cause, the officer[s] may, nonetheless, be entitled to qualified immunity from suit if there was arguable probable cause.  *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004).  Arguable probable cause exists where "the facts and circumstances [were] . . . such that the officer reasonably could have believed that probable cause existed."  *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997).

There was probable cause, and certainly arguable probable cause, to arrest Mr. Hoolihan.  Mr. Hoolihan's car, with its lights still on, was lodged against a bent parking sign in a deserted parking lot.  Officer Hobbs approached the car to investigate the situation.  He found Mr. Hoolihan slumped sideways in the driver's seat and the car still in "park."  His attempted to communicate with Mr. Hoolihan but received incoherent, mumbled responses.  When Officer Hobbs broke the back window and entered the car to secure it and check on Mr. Hoolihan, he was met with resistance.  Mr. Hoolihan grabbed his arm and began to strike him.[9]  There was nothing to indicate to Officer Hobbs that Mr. Hoolihan was acting unintentionally.

---

[9] While Clara Hoolihan, Mr. Hoolihan's mother, has testified that as a result of his medical conditions, Mr. Hoolihan has gone "into an unresponsive state" a number of times in the past twenty years and becomes "completely out of it" when that occurs [Doc. No. 82-3, 18:17–25], Mrs. Hoolihan was not present during the February 5th incident and cannot speak to Mr. Hoolihan's actions during the incident.  Thus, her testimony does not raise a genuine issue of material fact as to the relevant events of February 5th.

While there was a "Medic Alert" decal on the window of the driver's door, neither Officer Hobbs nor Officer Kendle noticed the decal [Pl's Resp. to Hobbs SMF ¶ 23; Kendle SMF ¶ 24].  Even if the Officers had seen the decal or the "Medic Alert" necklace Mr. Hoolihan was wearing, it would not have provided the Officers with the knowledge that Mr. Hoolihan was in an altered state of mind or in need of immediate medical attention due to a medical condition.  When Officer Hobbs entered the car, Mr. Hoolihan appeared conscious, countered Officer Hobbs's attempts to unlock the drivers's side door by grabbing his arm, and actively resisted him.  Based on these undisputed facts, a reasonable officer could have assumed that Mr. Hoolihan was acting intentionally in striking Officer Hobbs.  As such, actual probable cause existed to arrest Mr. Hoolihan for the offense of simple battery against a police officer,[10] and Mr. Hoolihan's arrest did not violate his rights under either the Fourth or Fourteenth Amendments.[11]

Mr. Hoolihan also argues that excessive force was used against him.  "[T]he

_____

[10]  Under O.C.G.A. § 16-5-23(a), "[a] person commits the offense of simple battery when he . . . intentionally makes physical contact of an insulting or provoking nature with the person of another . . . ."

[11]  Having concluded that probable cause existed to arrest Mr. Hoolihan for the offense of battery, the Court does not consider whether probable cause also existed for Mr. Hoolihan's arrest for obstruction.

right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). However, "[t]he Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002). A proper level of force is that level of force which a reasonable officer would have believed was necessary under the situation. *Id.* Thus, the relevant "question is whether the officer's conduct is objectively reasonable in light of the facts confronting the officer." *Durruthy*, 351 F.3d at 1093 (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002)). The *Graham* factors, 490 U.S. at 396, guide the court's inquiry into the necessity for the use of force. Accordingly, the court must "evaluate the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Vinyard*, 311 F.3d at 1347. To determine whether the force used was reasonable, the court "examine[s] (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted. *Id.* (quoting *Lee*, 284 F.3d at 1198). In the excessive force context, qualified immunity applies even if "[a]n

-14-

officer . . . correctly perceive[s] all of the relevant facts but ha[s] a [reasonably] mistaken understanding as to whether a particular amount of force is legal in those circumstances." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). Thus, qualified immunity applies to shield an officer from suit, regardless of the officer's subjective reasons for the use of force, "if an objectively reasonable officer in the same situation could have believed the use of force was not excessive." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 738 (11th Cir. 2010).

The force used to effectuate Mr. Hoolihan's arrest was not excessive. Upon approaching Mr. Hoolihan's car, Officer Hobbs stood by the driver's-side window and attempted to raise Mr. Hoolihan's attention. Failing to receive a coherent response, Officer Hobbs entered Mr. Hoolihan's car to check on his condition and secure the car which was still in "drive." He was met with resistance when he attempted to unlock the driver's door. When he freed himself from Mr. Hoolihan's grasp, Mr. Hoolihan began striking Officer Hobbs's shoulder. Officer Hobb's commanded Mr. Hoolihan to stop; however, Mr. Hoolihan did not. At this point, it could have appeared to a reasonable officer that Mr. Hoolihan was guilty not only of misdemeanor battery of a police officer but also of obstructing a police officer in

the lawful performance of his duty[12] Officer Hobbs was discharging his official duty in entering Mr. Hoolihan's car and attempting to secure the vehicle and check on Mr. Hoolihan's condition.  As Officer Hobbs met with acts of directed violence, rather than accidental bodily contact resulting from the uncoordinated, involuntary flailing of an individual in need of immediate medical attention, it could have been reasonable to conclude that Mr. Hoolihan had committed battery against a police officer — serious offense.[13]  Officer Hobbs was in a precarious and volatile situation within the close confines of a car facing a combative individual in control of the driver's console.  The situation posed an immediate threat to Officer Hobbs's safety. And, even after Officer Hobbs's commanded Mr. Hoolihan to stop fighting, Mr. Hoolihan continued to resist the Officer with violence.  Thus, the *Graham* factors weigh in favor of Officer Hobbs's use of force.

---

[12]  "Any act that directly tends to interfere with, interpose obstacles or impediments, hinder, impede, interrupt in any manner, or prevent or pervert the public administration of justice constitutes obstruction of the police in performing their lawful duty.  *Gillison v. State*, 561 S.E.2d 879, 880 (Ga. Ct. App. 2002) (internal quotation marks omitted).  Moreover, under Georgia law, "[w]hoever knowingly and willfully resists, obstructs, or opposes any law enforcement officer . . . in the lawful discharge of his official duties by offering or doing violence to the person of such officer . . . is guilty of a felony."  *Id.* (quoting O.C.G.A. § 16-10-24(b)).

[13]  O.C.G.A. § 16-5-23(e) states: "Any person who commits the offense of simple battery against a police officer . . . engaged in carrying out official duties shall, upon conviction thereof, be punished for a misdemeanor of a high and aggravated nature."

As Mr. Hoolihan failed to heed Officer Hobbs's commands to stop fighting, Officer Hobbs struck Mr. Hoolihan in the face a couple of times with his closed fist. Thereafter, Mr. Hoolihan began kicking Officer Hobbs. He was still resisting when

Officer Hobbs unlocked the front passenger-side door and Officer Kendle removed Mr. Hoolihan from the car. Mr. Hoolihan landed face down on the pavement and would not allow himself to be handcuffed. Exacerbating the situation, Mr. Hoolihan's car started to roll backwards. Officer Hobbs delivered a blow to Mr. Hoolihan's head and he was handcuffed. No further force was used against Mr. Hoolihan. Under these facts, a reasonable officer could have concluded that the force used was reasonable. There was a need to use force to effectuate an arrest in the face of Mr. Hoolihan's active resistance. The amount of force used was proportionate to the need for force. Mr. Hoolihan argues that the Officers reacted with unwarranted and deadly force.[14] In *Baltimore v. City of Albany, Ga.*, 183 F. App'x

---

[14] Mr. Hoolihan states that a police officer called a friend of Mr. Hoolihan's, Elizabeth Langan, to inform her that officers had come upon Mr. Hoolihan in a parking lot where he appeared to have hit a pole with his car and that he had fallen out of the car when the car door was opened, hit his head on the ground, and was being taken to the hospital. Ms. Langan has testified that she received a call from Mr. Hoolihan's cell phone on the night in question but cannot remember the name of the police officer who called her. According to Mr. Hoolihan, the call was made to cover up the Officers use of excessive force. The information imparted to Ms. Langan does not raise that inference. The account provided to Ms. Langan, while missing details about the altercation with Mr. Hoolihan, was not inconsistent with the events of the night: a police officer could have reasonably assumed

891, 898 (2006), the Eleventh Circuit concluded that "striking a suspect in the head with a heavy flashlight or other blunt instrument at least poses a substantial risk of serious bodily injury, if not death" and, thus, "constitutes deadly force."  Courts have characterized police equipment, such as guns, batons, flashlights, as blunt instruments likely to pose a substantial risk of serious injury if applied to a suspect's head with force.  *See id.*  Here, Officer Hobbs struck Mr. Hoolihan in the head with his elbow.  In this instance, an elbow strike to the head is not the equivalent of a strike with a "blunt instrument" likely to pose a substantial risk of serious injury.  As such, Officer Hobbs's elbow strike did not constitute deadly force.  Mr. Hoolihan points to no case law indicating that an elbow strike to the head to subdue a resisting suspect constitutes deadly force.  Thus, even if an elbow strike to the head is considered deadly force, Officer Hobbs had no notice, by way of clearly established law, that the use of such force was unlawful under the circumstance.  Overall, considering that Mr. Hoolihan was resisting forcefully, the Officers' use of force, including the closed-fist face strikes, was proportionate to the need for force.[15]

---

that Mr. Hoolihan had struck a parking sign with his car; Mr. Hoolihan landed on his face when Officer Kendle pulled him for the car; and he likely hit his face and started bleeding as a result.

[15]  Mr. Hoolihan indicates that he also received a bruise which, in his opinion, appeared to be consistent with a baton strike.  However, the Officers do not recount using a baton.

Lastly, the Court analyzes the extent of Mr. Hoolihan's injuries. While Mr. Hoolihan suffered cuts, abrasions, bruising, and swelling. Mr. Hoolihan does allege that he continues to suffer from floaters in the eye and cannot remember things on occasion. The injuries suffered by Mr. Hoolihan are not excessive in light of the circumstances and the resistance offered by Mr. Hoolihan.

In sum, the Court concludes that the force used was necessary to effectuate Mr. Hoolihan's arrest and that it was not excessive. Accordingly, the Officers are entitled to qualified immunity as to Count I.

### 2.    CONSPIRACY (COUNT IV)

Counts IV Mr. Hoolihan's complaint allege that the Officers' actions "constituted a civil rights conspiracy to cover-up their false use of their arrest powers, and their excessive force upon Plaintiff" [Doc. No. 31, ¶44]. "To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff must show that the parties reached an understanding to deny the plaintiff his or her rights and provide an actionable wrong to support the conspiracy." *Bailey v. Bd. of County Comm'r of Alachua County, Fla.*, 956 F.2d 1112, 1122 (11th Cir. 1992) (internal quotation marks omitted). Here, not only has Mr. Hoolihan failed to provide an actionable wrong, he has adduced

---

Even if Mr. Hoolihan was struck with a baton on the back of his thigh, in view of Mr. Hoolihan's resistance, the use of the baton was not excessive force.

no evidence indicating that the Officers reached an understanding to deny him his rights. Accordingly, the Officers are entitled to summary judgment as to Mr. Hoolihan's conspiracy claim.

### 3. STATE LAW CLAIMS: BATTERY (COUNT IV) AND MALICIOUS PROSECUTION (COUNT VII)

Mr. Hoolihan asserts state-law claims for battery and malicious prosecution against Officers Hobbs and Kendle. With respect to the claim of battery, police officers have the right to "use that force reasonably necessary" to make a lawful arrest. *Smith v. Holeman*, 441 S.E.2d 487, 491 (Ga. Ct. App. 1994). The Court concluded above that the Officers use of force was reasonably necessary and not excessive. Thus, Mr. Hoolihan has failed to establish a claim for battery.

Similarly, Mr. Hoolihan's claim for malicious prosecution also fails. In accordance with O.C.G.A. § 51-7-40, a claim for malicious prosecution lies where an individual is subject to "[a] criminal prosecution which is carried on maliciously and without any probable cause and which causes damages to the person prosecuted." For the purposes of a malicious prosecution action, "an inquiry before a committing court or a magistrate shall amount to a prosecution." O.C.G.A. § 51-7-42; *see also Christman v. Holmes*, 448 F. App'x 869, 872 (11th Cir. 2011) ("[I]n the case of warrantless arrest, the judicial proceeding does not commence until arraignment or

indictment."). Here, Mr. Hoolihan provides no evidence that he was prosecuted pursuant to the citations he received. In fact, he states that "the Solicitor General of Clayton County dismissed the[] charges . . ." [Doc. No. 82, 9]. As such, the Officers are entitled to summary judgement as to Mr. Hoolihan's claims for battery and malicious prosecution.

Furthermore, even if violations of Georgia law were established, official immunity protects Georgia officials from suit in their individual capacities for their discretionary acts performed without actual malice or an intent to injure. *Cameron v. Lang*, 549 S.E.2d 341, 345 (Ga. 2001). "Actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact." *Adams v. Hazelwood*, 520 S.E.2d 896, 898 (Ga. 1999) (internal quotation marks omitted). Here, official immunity applies to shield Officers Hobbs and Kendle from Mr. Hoolihan's state law claims. It is not disputed that the Officers were performing discretionary acts and Mr. Hoolihan has failed to show that they acted with actual malice or "inten[ded] to do something wrongful or illegal." *Adams*, 520 S.E.2d at 898. Mr. Hoolihan has not shown that the Officers used force on him with an intent to commit a wrongful act. Mr. Hoolihan argues that malice underlying the claim for malicious prosecution can be inferred from the fact he was cited by the Officers for

battery and obstruction—violations requiring the commission of an intentional act—after Officer Hobbs became aware that he was suffering from a genuine medical emergency. According to Mr. Hoolihan, after speaking to medical personnel Officer Hobbs knew that his actions were unintentional. Officer Hobbs, however, was only told that Mr. Hoolihan had a diabetes related issue which made Officer Hobbs realize that Mr. Hoolihan was not under the influence of alcohol. There is no indication that Officer Hobbs was told by medical personnel that Mr. Hoolihan's violence toward the Officers was unintentional, nor does the evidence indicate that Officer Hobbs had subjectively realized that Mr. Hoolihan had acted unintentionally. Thus, as Mr. Hoolihan has failed to establish that the Officers acted with actual malice or an intent to harm, the Officers would be entitled to official immunity in the event there was a genuine dispute as to whether state law violations had, in fact, occurred.

## D.    CLAIMS AGAINST CLAYTON COUNTY

Based upon the actions of Officer Hobbs and Kendle, Mr. Hoolihan has filed claims under § 1983 and the ADA against Clayton County, Georgia.

### 1.    CONSTITUTIONAL VIOLATION (COUNT II)

"If a [county] employee violates another's constitutional rights, the [county]

may be liable if it had a policy or custom of failing to train its employees and that failure to train caused the constitutional violation." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1170 (11th Cir. 2009).  However, "§ 1983 liability only attaches where the failure to train amounted to deliberate indifference to the rights of persons with whom the police came into contact." *Id.*

The Court concluded above that Officers Hobbs and Kendle did not violate Mr. Hoolihan's constitutional rights.  Specifically, the Court found that probable cause existed for Mr. Hoolihan's arrest and that the force used by the Officers to effectuate his arrest was necessary and not excessive under the circumstances. Accordingly, in the absence of an underlying constitutional violation by the Officers, Clayton County cannot be held liable on the grounds that its policies or customs resulted in a violation of Mr. Hoolihan's constitutional rights.  *See Gish v. Thomas*, 516 F.3d 953, 954 (11th Cir. 2008) (stating that "[w]ithout an underlying violation" of the plaintiff's constitutional rights, the defendant county "cannot be held liable on the ground that its policy caused a constitutional violation.").    Accordingly, Clayton County is entitled to summary judgment as to Count II.[16]

---

[16]  The Court notes that Mr. Hoolihan has stipulated the Clayton County is entitled to summary judgment with respect to Count II as "there has been no evidence adduced that would allow a court to conclude the defendant County is liable . . . pursuant to the dictates of *Monell v. New York City Dept. of Soc. Svcs.*, 436 U.S. 658 (1978)" [Doc. No. 79, 6].

## 2.    VIOLATION OF THE ADA (COUNT III)

The ADA mandates that "no qualified individual with a disability shall, by reason of such disability be . . . denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  To maintain a claim under Title II of the ADA,

> a plaintiff generally must prove (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

*Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1083 (11th Cir. 2007).  Mr. Hoolihan argues that not only did the County provide no education to its officers with regards to indicators of a diabetic emergency, it failed to even train its officers with regard to the ADA.  He characterizes his ADA claim as resting upon the theory that his "disability-related conduct [was] confused with criminal activity, therefore leading to the arrest of an individual with a disability" [Doc. No. 79, 14 (quoting *Gorman v. Bartch*, 925 F. Supp. 653 (W.D. Mo. 1996))].  The concern identified in *Gorman*, however, "describes a situation . . . wherein a person was arrested *because of his disability*." *Gorman*, 925 F. Supp. at 656 (emphasis added).  Mr. Hoolihan cites *Lewis v. Truitt*, 960 F. Supp. 175 (S.D. Ind. 1997), in support of his claim.  In *Lewis*, the

-24-

police came to the plaintiff's home to transfer a baby, whom plaintiff claimed as his granddaughter, to Child Protective Services. The baby's father went to retrieve the her, while the officers attempted to speak to the plaintiff, the baby's grandfather. The officers were told that the plaintiff was deaf, and, at least one of the officers had occasion to know that plaintiff was deaf from a previous interaction with him. The officers were also told that the best way to communicate with the plaintiff was on paper; however, the officers did not attempt to communicate with the plaintiff on paper. When the plaintiff went inside the house, the officers followed uninvited, and allegedly assaulted the plaintiff even though they were told that plaintiff could not hear their instructions. The plaintiff was arrested for resisting law enforcement. The court applied a three part test for liability under the ADA wherein the plaintiff must "show that (1) he was disabled, (2) the defendants knew he or should have known he was disabled, and (3) the defendants arrested him because of legal conduct related to his disability." *Lewis*, 960 F. Supp. at 178. The court concluded that the plaintiff had a "right to be informed by what authority the officers had come upon his property and by what authority they were entering his house." *Id.* Even knowing that he was deaf, the plaintiff argued, the officers refused to take the necessary steps to communicate with him. Rather, they arrested him for his failure

-25-

to respond appropriately.  The court denied the defendants motion for summary judgment on the plaintiff's claim that he was arrested because of his disability as the defendants failed to present evidence to contradict the plaintiff's argument.  *Lewis*, 960 F. Supp. 179.  The facts in *Lewis* indicated that the officers were aware of the plaintiff's disability and, yet, failed to communicate with him in a manner he could understand.  There was no indication that the plaintiff in *Lewis* acted unlawfully during his interaction with the police.  Here, however, the Officers were not aware of Mr. Hoolihan's medical condition, and, unlike the conduct of the *Lewis* plaintiff, Mr. Hoolihan acted unlawfully — he struck Officer Hobbs repeatedly.  Mr. Hoolihan was not arrested for legal conduct related to his medical condition, rather he was arrested for his actions, which under the circumstances could have been reasonably viewed to be intentional and, thus, unlawful.

In *Sanders v. City of Minneapolis, Minn.*, 474 F.3d 523 (8th Cir. 2007), a wife filed suit against the city for the shooting death of her husband who had bipolar disorder. The police officers in *Sanders* responded to calls of an erratic driver; they suspected that the driver, later identified as the husband, had a mental disorder.  When officers approached the husband's car and asked him to put his hands up, he accelerated forward toward two officers who were on foot.  At least three officers shot at the car

and the husband was pronounced dead at the scene.  The wife claimed an ADA violation, alleging that "had the City properly trained its officers in how to approach individuals with mental illness, the situation would not have escalated to the point of needing to use deadly force." *Sanders*, 474 F.3d at 527.  The appeals court concluded that there was no violation of the ADA as "[i]t was not the City's failure to train its officers, but [the husband's] apparent attempt to run over the officers that precipitated the shooting." *Id.* at 527–28.  Similarly, here, it was not the County's failure to train its officers to reasonably accommodate individuals with diabetes or to differentiate between individuals in the throes of severe hypoglycemia and those under the influence of an intoxicant, but Mr. Hoolihan's resistance to the Officers that led to his arrest and injuries.  Accordingly, Mr. Hoolihan has failed to establish that he was arrested because of his disability, and, thus, Clayton County is entitled to summary judgment as to Count III.

## III.   CONCLUSION

For the above stated reasons, Defendant Hobbs's motion for summary judgment [Doc. No. 70] is **GRANTED**.  Defendant Clayton County's motion for summary judgment [Doc. No. 71] is **GRANTED**.  Defendant Kendle's motion for summary judgment is [Doc. No. 72] **GRANTED**.  As there remain no other outstanding claims, the Clerk is **DIRECTED** to terminate this action.

**SO ORDERED**, this 12<u>th</u> day of March, 2012.

<u>s/Steve C. Jones</u>
STEVE C. JONES
United States District Judge